

Signed and Filed: March 03, 2006

_____
**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>DEMAS WAI YAN,<br>aka DENNIS YAN,<br><br>        Debtor. | Case No: 04-33526 TEC<br><br>Chapter 11 |
| DEMAS WAI YAN, aka DENNIS YAN<br><br>        Plaintiff,<br>vs.<br><br>DONG XING FU, (aka TONY FU) et al.<br><br>        Defendants.<br><br>(San Francisco Superior Court No. 428960) | Adv. Proc. No. 05-3257 TC |
| WEI SUEN,<br><br>        Plaintiff,<br>vs.<br><br>DEMAS YAN, et al.,<br>        Defendants.<br>(San Francisco Sup. Ct. No. 428960) | Adv. Proc. No. 05-3257 TC |
| STELLA CHEN,<br><br>        Plaintiff,<br>vs.<br><br>DEMAS WAI YAN, aka DENNIS YAN,<br>        Defendant. | Adv. Proc. No. 05-3236<br><br>**AMENDED DECISION<br>AFTER TRIAL** |

**AMENDED DECISION AFTER TRIAL**

**BACKGROUND**

(1) This case arises out of a dispute between two former friends, Demas Yan and Tony Fu, and concerns the alleged breach of two written contracts. The first contract is a joint-venture agreement between Yan and Fu involving the development of real property in San Francisco. Fu assigned his rights to Wei Suen, who seeks to recover from Yan a share of the proceeds from the sale of that property. The second contract is a promissory note from Yan to Fu's sister (Stella Chen) secured by the same property. Chen seeks to enforce that note.

(2) Winky Wong owned a single-family residence at 663 Chenery Street in San Francisco (the Property). In October 2000, he entered into a written agreement with Yan and Fu to demolish the existing improvements and build four condominium units. Wong was to supply the Property, in return for 50 percent of the proceeds from the sale of the four units. Yan and Fu were to pay the cost of construction, and together were to receive the remaining 50 percent of the sale proceeds.

(3) In February 2000, Yan purchased the Property from Wong. On October 12, 2000, Wong, Yan, and Fu executed a written cancellation of their three-party agreement. On October 18, 2000, Yan and Fu entered into a new written joint-venture agreement (the Joint-Venture Agreement or Agreement). Yan was to provide the Property and costs of construction up to $300,000, in return for 75 percent of the sale proceeds. Fu was to supervise construction and supply all additional costs of construction, in return for 25 percent of the sale proceeds.

AMENDED DECISION AFTER TRIAL           -2-

Case: 05-03257   Doc# 32   Filed: 03/03/06   Entered: 03/03/06 14:49:11   Page 2 of 14

(4) Work on the Property started in May 2001 and was completed in August 2003. Fu was without a valid contractors license during the entire construction period. Yan sold all four units by mid-2005 for a combined price of approximately $2.3 million. Suen, as assignee of Fu, seeks 25 percent of those proceeds. Yan contends that Fu's share of the proceeds represents compensation for services for which a contractor's license is required, and because Fu did not have such a license, neither Fu nor his assignee can enforce a claim to those proceeds.

(5) On November 12, 2002, Yan executed a promissory note in favor of Chen in the amount of $450,000 (the Note), together with a deed of trust against the Property securing payment of the Note (the Deed of Trust). Chen contends that the Note represents a promise to repay a like amount of cash advanced to Yan at a Hong Kong restaurant in February 2002. The cash was advanced by a relative of Fu, who lives in Hong Kong, and who asked that the Note be made payable to Chen. Yan contends that he received no such loan, and that the only consideration for the Note was Fu's interest under the Joint-Venture Agreement. Yan asserts that Fu expressly asked him to execute the Note as the embodiment of Fu's interest under the Agreement, and that the amount of the Note represents the value of Fu's interest under the Agreement, 25 percent of the price that the parties expected the Property to sell for when completed. Yan further contends that the Note, like the Joint-Venture Agreement, is not enforceable under California law, because it represents compensation for construction services performed by Fu while he was not a licensed contractor.
//

AMENDED DECISION AFTER TRIAL -3-

**THE JOINT VENTURE AGREEMENT**

(6) Yan and Fu did not intend that Fu receive a present 25 percent ownership interest in the Property upon the execution of the Joint-Venture Agreement. Rather, the parties intended that Fu would become an equitable owner of a 25 percent undivided interest in the Property only after he performed his obligations under that Agreement. In so finding, I note that Yan had provided the entire consideration for the purchase of the fee interest in the Property from Winky Wong in February 2000, that Yan retained legal title to the Property following the execution of the Agreement, and that Fu had not yet performed his duties under the Agreement.

(7) Yan and Fu intended that Fu would be responsible for executing the planned construction. Yan was to receive 75 percent of the sales proceeds in return for supplying the underlying real property and $300,000 toward the cost of construction. Fu was to receive 25 percent of the proceeds in return for performing his executive duties and for covering any additional costs of construction (expected to be $300,000 to $400,000). The Joint-Venture Agreement permitted Fu to hire a licensed general contractor and did not require Fu to act as a general contractor in executing the construction.

(8) Fu did not retain a general contractor, but supervised the construction himself. He hired a licensed subcontractor to perform the electrical work. Fu did not, however, hire licensed contractors to perform the bulk of the construction work. Instead, he hired employees to perform those tasks and supervised the work of those employees himself.

(9) I conclude that Fu acted as a contractor in performing

AMENDED DECISION AFTER TRIAL        -4-

his duties under the Joint-Venture Agreement. Under California law, a "'[c]ontractor . . . is synonymous with 'builder' and . . . , a contractor is any person who undertakes to . . . himself or herself or by or through others, construct . . . any building . . . .'" Cal. Bus. & Prof. Code § 7026. A person is not excluded from being a contractor merely because he or she is an owner of the property. Moon v. Goldstein, 69 Cal. App. 2d 800, 801-03 (1945). An employee who acts under the supervision of another does not act as a contractor, but an owner who, without hiring a general contractor, supervises overall construction is a contractor. Dorsk v. Spivack, 107 Cal. App. 2d 206, 208 (1951).

(10) At the time Fu performed the work in question, he did not have a contractor's license.

(11) In performing the work in question, Fu did not come within any of the statutory exceptions that permit an owner to perform certain contracting work without a license. Cal. Bus. & Prof. Code § 7044. He does not come within any of the owner-builder exceptions because, as explained above, he was not an owner at the time he performed the work in question. Fu also fails to qualify for the owner-builder exception of section 7044(a), because he and Yan intended to sell the Property upon completion of the improvements. Fu fails to qualify for the exception of section 7044(b) for the additional reason that he failed to hire licensed subcontractors to perform substantially all of the major tasks of construction. Moon, supra, 69 Cal. App. 2d at 803-04.

(12) A person who is not a licensed contractor, and who performs acts for which a contractors license is required, may not collect any compensation for the performance of such acts. Bus. &

AMENDED DECISION AFTER TRIAL            -5-

Prof. Code § 7031.  Mr. Fu did not submit any evidence to qualify for the substantial compliance exception to this statute.

(13) In seeking to recover 25 percent of proceeds of the sale of the Property, Fu is in substance seeking compensation for services for which a contractor's license was required.  Although he was not required to act as a contractor to perform his duties under the Joint-Venture Agreement, Fu in fact elected to perform those duties by performing acts for which a contractor's license was required.  The following language of the California Supreme Court, explaining that the purpose of section 7031 is to discourage unlicensed contractors from performing services, suggests that the statute should be read broadly to preclude this court from awarding any payment for the work Fu performed.

> The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services.  The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business.
>
> Section 7031 advances this purpose by withholding judicial aid from those who seek compensation for unlicensed contract work.  The obvious statutory intent is to discourage persons who have failed to comply with the licensing law from offering or providing their unlicensed services for pay.
>
> Because of the strength and clarity of this policy, it is well settled that section 7031 applies despite injustice to the unlicensed contractor.  "Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties . . . .*"

Hydrotech Systems, Ltd. v. Oasis Waterpark, 52 Cal. 3d 988, 995 (1991)(citations omitted) (emphasis in original).  That Yan may

**AMENDED DECISION AFTER TRIAL**      -6-

have known that Fu was unlicensed does not create an exception from the bar of section 7031. Id. at 997.

(14) That Fu supplied materials in addition to services does not support an award of part of the amount claimed. Fu did not itemize the value of materials provided. More important, in applying section 7031, California courts have generally not apportioned the value provided by unlicensed contractors between services and materials, but rather have denied payment for materials supplied as well as for services performed. Id. at 997.

(15) Section 7031 applies notwithstanding the fact that Yan and Fu were engaged in a joint venture and notwithstanding Epstein v. Stahl, 176 Cal. App. 2d 53 (1959). Epstein is distinguishable, because the property in question there had not been offered for sale. In the present case, the property in question here was put up for sale immediately after completion. The legislature affords owners broader rights to make improvements to their property without a licensed contractor when the property is not offered for sale, presumably because the sale of potentially defective property raises special concerns. Cal. Bus. & Prof. Code § 7044(a). Epstein, which was decided in 1959, may also not be good law. First, the legislature has since strengthened the bar against recovery by unlicensed contractors by restricting the substantial-compliance exception to section 7031. Hydrotech, supra, 52 Cal. 3d at 997 n.5. Second, the California Supreme Court has since stated explicitly that the policy of discouraging unlicensed contractors from offering services for pay takes precedence over concerns regarding injustice between the parties -- the basis for the exception to 7031 created in Epstein.

AMENDED DECISION AFTER TRIAL          -7-

Case: 05-03257   Doc# 32   Filed: 03/03/06   Entered: 03/03/06 14:49:11   Page 7 of 14

Id. at 995-99.

(16) In light of the above, Fu is entitled to recover no part of the proceeds of sale of the Property pursuant to the Joint-Venture Agreement.

(17) Wei Suen, as assignee of Fu's rights under the Joint-Venture Agreement, has no greater rights than Fu under that Agreement.

**THE NOTE**

A. ENFORCEABILITY

(18) The Note was given in consideration of the otherwise undocumented cash loan made to Yan in Hong Kong in February 2002. Yan had asked Tony Fu to help him obtain a $450,000 loan. Tony Fu sought help from his brother Fei Sing Fu, who lives in Hong Kong. In February 2002, Yan traveled to Hong Kong, where Fei Sing Fu loaned Yan some of the needed funds himself and arranged for one of his relatives, Leung Hing Lau, to loan Yan the remainder of the funds sought. Yan promised to repay the loan promptly, and when he did not do so, Fei Sing Fu repaid Leung Hing Lau. Fei Sing Fu then asked Tony Fu to help obtain repayment from Yan. In a meeting in San Francisco in November 20002, Yan signed the Note and the Deed of Trust, representing his obligation to repay the February 2002 loan. Fei Sing Fu had asked that the Note be made payable to Chen, because Fei Sing Fu lived too far away to enforce it himself, because Fei Sing Fu believed Chen was reliable, and because Chen, unlike Tony Fu, had no financial problems that might interfere with collection of the Note and remission of payment to Fei Sing Fu.

(19) The Note was complete in all respects when Yan signed it.

AMENDED DECISION AFTER TRIAL     -8-

Case: 05-03257   Doc# 32   Filed: 03/03/06   Entered: 03/03/06 14:49:11   Page 8 of 14

(20) The Note does not represent Fu's interest in the Joint-Venture Agreement.

(21) In making these findings, I make and rely upon the following subsidiary findings of fact.

(22) The Note makes no reference to the Joint-Venture Agreement. When Yan bought the Property from Wong, he was careful to cancel formally his prior agreement with Fu and Wong. If the Note was intended to cash out Fu's rights under the Joint-Venture Agreement, one would expect some similar formal acknowledgment of that arrangement, either in the Note itself or via some written side agreement. This is especially so because the Note is payable to Chen, and thus does not itself suggest any relationship between the Note and Fu's rights under the Joint-Venture Agreement.

(23) Similarly, Yan also signed escrow instructions providing for the full payment of the Note to Chen, without either making any statement that such payment constituted full payment to Fu or arranging for an acknowledgment of satisfaction from Fu. Moreover, these escrow instructions were submitted in late 2004, when the project was complete, when one unit was being sold, and thus when Fu would expect to be paid under the Joint-Venture Agreement if the Note represented his rights under that Agreement.

(24) Yan's testimony that the Note represented Fu's rights under the Joint-Venture Agreement is undermined by his own testimony regarding the operation of that Agreement. Yan testified that the $450,000 payable under the Note represented Fu's 25 percent interest in the sales proceeds of the Property, which at the time the Note was signed, the parties estimated would be about $1.8 million. Such a calculation proceeds from the assumption that

AMENDED DECISION AFTER TRIAL   -9-

Fu's share was to be calculated from *gross* proceeds (i.e., without deducting the mortgages to be paid from the sale price). In contesting payment of Suen's claim to 25 percent of the $2.3 gross proceeds of sale, however, Yan testified that the shares each party was to receive under the Joint-Venture Agreement were to be calculated from *net* proceeds after the mortgages on the Property at the time the Agreement was signed were paid. If believed, this testimony severs the asserted link between the amount due under the Note and the amount due under the Joint-Venture Agreement. Whether or not believed, the inconsistency in testimony undermines Yan's credibility.

(25) I credit the testimony of the Notary that he would not have attested to Yan's signature on the Deed of Trust if either the Note or Deed of Trust were incomplete.

(26) In making the above findings, I do not rely upon any presumption in favor of the existence of consideration. The acknowledgment of consideration contained in the Note creates a presumption that consideration was given, but that presumption disappeared when Yan rebutted it by presenting evidence that no consideration was in fact given. In finding that Yan received lawful consideration for the Note, I rely on the weight of the evidence presented rather than any presumption.

(27) The Note and Deed of Trust were supported by lawful consideration and are fully enforceable. Chen is entitled to recover $450,000, plus any allowable interest, attorneys fees, and costs.

///

///

AMENDED DECISION AFTER TRIAL      -10-

Case: 05-03257   Doc# 32   Filed: 03/03/06   Entered: 03/03/06 14:49:11   Page 10 of 14

B. INTEREST

(28) The Note contains no language providing for the payment of interest. The Note states that it is payable upon the sale of the Property and that the Property is to be actively marketed to facilitate such a sale. I find that the parties intended that the Property was not to be marketed until the construction contemplated by the Joint-Venture Agreement was complete, and that no interest be payable until the Property was sold, or until Yan breached his promise to market the Property.

(29) I find that Yan breached his obligation to market the Property starting on March 1, 2004. In so finding, I make and rely upon the following subsidiary findings of fact. Yan tried to sell one unit immediately after the construction was complete. The sale failed to close because it did not provide sufficient cash to pay off the Note in full. Yan did not attempt to work out a partial release of lien to enable the sale to close without full payment to Chen and attempt to sell the other units. Rather, on about March 1, 2004, Yan started seeking tenants for the units. This conduct signals cessation of his efforts to sell the units, and constitutes breach of the Note justifying the imposition of prejudgment interest.

(30) I determine that Chen is entitled to prejudgment interest from March 1, 2004 forward. Cal. Civ. Code § 3287(a).

(31) I determine as an exercise of discretion that the appropriate rate for prejudgment interest is the federal rate specified in 28 U.S.C. § 1961. I determine that the state-law rate of 10 percent under Cal. Civ. Code § 3289(b) is not appropriate, because the loan was well secured, because any right to recover

AMENDED DECISION AFTER TRIAL        -11-

interest is implicit rather than explicit, and because it is difficult to determine when the Property would have sold (the date upon which payment of principal was due) had Yan properly marketed the Property.

(32) Chen is entitled to prejudgment interest in the amount of $42,654.58 ($450,000 x .0472 x 733 days/365).

C. ATTORNEYS FEES AND COSTS

(33) Both the Note and Deed of Trust contain clauses that permit Chen to recover reasonable attorneys fees and costs in any successful action to enforce those contracts.

(34) Chen is the prevailing party in her action to enforce the Note and is thus entitled to recover attorneys fees and costs.

(35) Chen is entitled under the Deed of Trust to recover foreclosure fees of $3,203, in addition to attorneys fees and costs.

(36) Chen is entitled to recover attorneys fees and costs in the amount of $275,000 for all activity in this action through March 3, 2006. Chen's counsel seeks fees and costs in the amount of $304,384. Yan's objections based on asserted duplication of services and unnecessary depositions are unfounded. Yan's objections to Mr. Farrer's hourly rates and the overall reasonableness of the fees and costs sought are sustained in part. This action was complex, hard-fought, and involved several proceedings in two courts. Mr. Farrer performed very ably. I find it appropriate, however, to make some adjustment to the lodestar rate calculated by Mr. Farrer. First, Mr. Farrer rarely utilized lower-paid personnel in pretrial work. While the hourly rates Mr. Farrer charges are reasonable for the work that requires his full

expertise, not all the pretrial work was of that complexity. Second, I find that the amount sought for services performed after the conclusion of the trial (approximately $50,000) is unreasonably large. The vast majority of this work consisted of preparing a fee application (after the court had already ruled that Chen was the prevailing party and entitled to recover fees), and preparing opposition to a motion for new trial that did not raise difficult issues.

**\*\*END OF AMENDED DECISION\*\***

## Court Service List

William Webb Farrer, Esq.
Law Offices of William Webb Farrer
300 Montgomery Street
Suite 600
San Francisco, CA 94104

Stella Chen
1672 12th Avenue
San Francisco, CA 94122

Mark J. Romeo, Esq.
Law Offices of Mark J. Romeo
130 Sutter Street 7th Floor
San Francisco, CA 94104

Demas Wai Yan
1433 7th Avenue
San Francisco, CA 94122

John Chu, Esq.
Corporate Counsel Law Group
505 Sansome Street
Suite 475
San Francisco, CA 94111

Tony Fu
5813 Geary Boulevard
PMB 188
San Francisco, CA 94121

Office of the U.S. Trustee
235 Pine Street
Suite 700
San Francisco, CA 94104